UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 23-CR-00358(1) (JMB/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Derrick John Thompson, | |
| Defendant. | |

---

Nathan Hoye Nelson, Ruth Shnider, and Thomas Calhoun-Lopez, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Aaron J. Morrison and Matthew Deates, Office of the Federal Defender, Minneapolis, MN, for Defendant Derrick John Thompson.

---

This matter is before the Court on Defendant Derrick John Thompson's motion for judgment of acquittal or, in the alternative, a new trial. (Doc. No. 99.) The Government opposes the motion. (Doc. No. 117.) For the reasons discussed below, the Court denies the motion.

## BACKGROUND

On December 5, 2023, Thompson was charged by a federal indictment with three offenses: (1) possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 1); (2) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 2); and (3) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). (Doc. No. 8.) Count 1 of the Indictment alleges as follows:

1

> On or about June 16, 2023, in the State and District of Minnesota, the defendant, **DERRICK JOHN THOMPSON**, did unlawfully, knowingly and intentionally possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly called "fentanyl"), a controlled substance; all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

(*Id.* at 1 (emphasis in original).)[1]

Before trial, the parties submitted proposed jury instructions to the Court on the elements of Count 1. (Doc No. 58 at 46–47; Doc. No. 60 at 4, 30.) The Government's proposed instruction referred to the controlled substance as "fentanyl," although the Government did request that the Court read the Indictment to the jury. (Doc No. 58 at 44, 46–47.) Thompson's proposed instruction referred to it only by its chemical name. (Doc. No. 60 at 4, 30.)

During trial, the Government's expert witness testified that she had analyzed the relevant substances to identify the "presence or absence of controlled substances" and determined that they contained "fentanyl." (Doc. No. 96 at 5:9–11, 15:18–16:11, 18:17–19:3.) The expert further testified that the substances containing fentanyl were found to weigh a total of 251.331 grams. (*Id.* at 16:14–17:7, 20:6–12.) No witnesses, however,

---

[1] The Indictment inadvertently omits the first portion of the statutorily proscribed chemical compound name, referring to it as "N-[1-(2-phenylethyl)-4-piperidinyl] propanamide," (Doc. No. 8 at 1), instead of by the full name—"N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide." *See* 21 U.S.C. § 841(b)(1)(B)(vi). This typographical error occurred multiple times throughout the litigation, including in Thompson's proposed jury instructions and the Court's final jury instructions, which also contain an additional misspelling of "propanamide." (*See* Doc. No. 60 at 4, 30; Doc. No. 83 at 8, 11). These typographical errors do not impact the Court's analysis and Thompson does not make any argument based on these inadvertent discrepancies.

2

referred to the controlled substance by its chemical name; the testimony referred only to "fentanyl." At the close of the Government's case, defense counsel moved for judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29, which the Government opposed, and the Court denied. (Doc. No. 112 at 705:11–706:15.)

The Court's final jury instruction on the elements of Count 1 referred to the substance by its chemical name but, like the Indictment, also noted that the substance is "commonly called 'fentanyl.'" (*Compare* Doc. No. 83 at 11, *with* Doc. No. 8 at 1.) Thompson objected and requested that the Court use only the chemical name. (Doc. No. 112 at 725:11–17.) The Court overruled this objection. (*Id.* at 725:18–21.) The jury returned guilty verdicts on all counts and found that Count 1 involved at least forty grams of "N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly called 'fentanyl')." (Doc. No. 84.) Thompson now renews his Rule 29 motion or, in the alternative, moves for a new trial under Federal Rule of Criminal Procedure 33. (Doc. No. 99.)

## DISCUSSION

### I.  RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

Thompson argues that the evidence is insufficient to sustain the jury's verdict because trial witnesses referred only to "fentanyl," not to the chemical name for the substance. The Court does not agree and denies Thompson's motion.

Under Federal Rule of Criminal Procedure 29, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "This standard applies whether a timely motion is made before or after the jury verdict." *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018); *see* Fed.

3

R. Crim. P. 29(c). When deciding such motions, courts "consider the evidence in the light most favorable to the government, drawing all reasonable inferences and resolving all evidentiary conflicts in favor of the jury's verdict." *United States v. Aponte*, 619 F.3d 799, 804 (8th Cir. 2010). Courts must uphold the verdict "if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *Espinoza*, 885 F.3d at 520 (quotation omitted).

To obtain a conviction for the offense charged in Count 1, the Government needed to establish each of the essential elements of the offense set forth at 21 U.S.C. § 841(a)(1). Under that section, it is a crime for any person to knowingly or intentionally "possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The term "controlled substance" means "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of th[e] subchapter." 21 U.S.C. § 802(6). In part B, fentanyl is listed as a schedule II-controlled substance. 21 U.S.C. § 812, Sched. II(b)(6) (referring to "fentanyl" and not mentioning the chemical name); 21 C.F.R. § 1308.12(c)(9).

In addition, to satisfy the penalty provisions stated in the indictment for Count 1, the Government also had to prove that the quantity of the controlled substance at issue exceeded the threshold amount set forth in 21 U.S.C. § 841(b)(1)(B)(vi). This penalty section refers only to the chemical name for fentanyl, and establishes that when an offense involves forty grams or more of a mixture or substance containing a detectable amount of "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide," the offense is punishable

4

by a five-year minimum term of imprisonment and a forty-year maximum term of imprisonment. *See* 21 U.S.C. § 841(b)(1)(B).

As a threshold matter, the Court observes that Thompson's argument is narrow. Thompson makes no argument that the evidence was insufficient to establish a violation of section 841(a), that "fentanyl" is not a controlled substance, or that trial evidence failed to establish that the offense involved 251.331 grams of "fentanyl." Thompson also makes no argument that the various statutes at issue have ambiguous language or contain irreconcilable discrepancies. Rather, Thompson only argues that the evidence at trial was insufficient to establish the applicability of the penalty provision set forth in 18 U.S.C. § 841(b)(1)(B) because the testimony referred only to "fentanyl" and not to the chemical name. (Doc. No. 99 at 2–6.) For the following three reasons, the Court does not accept this argument.

First, the argument as presented, without more, would not justify the remedy requested. Here, the relevant jury instruction included both the chemical name and the statement that this substance is "commonly called 'fentanyl.'" (Doc. No. 83 at 11.) The Government's expert witness testified at trial that the relevant substances contained 251.331 grams of "fentanyl." (Doc. No. 96 at 15:18–16:11, 16:14–17:7, 18:17–19:3, 20:6–12.)[2] This evidence, viewed in the light most favorable to the Government and the jury verdict, can sustain Thompson's conviction because the jury instruction included both the common and chemical names for the substance. In other words, for the Court to grant the

---

[2] Thompson does not dispute this evidence.

relief requested, it would have to reconsider the decision to include both the common and chemical name in the jury instruction. The argument presented by Thompson, however, includes no legal authority for the proposition that inclusion of the language "commonly called fentanyl" misstates the law. Absent development of an argument challenging the inclusion of this language in the jury instruction, and because Thompson does not dispute that the trial evidence referred to 251.331 grams of "fentanyl," the Court cannot conclude that the evidence presented is insufficient to sustain the conviction in Count 1.[3]

Second, the Court concludes that the inclusion of the language "commonly called fentanyl" was a correct statement of the law because, as a matter of law, "fentanyl" and "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide" refer to the same substance. These terms are used interchangeably in federal regulations, countless court decisions, the sentencing guidelines, and FDA-approved labeling for prescription fentanyl products. *See, e.g.*, 28 C.F.R. § 50.21(d)(4)(vi) (noting that "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide" is "commonly known as fentanyl"); *United States v. Williams*, 106 F.4th 639, 646 n.1 (7th Cir. 2024) ("The statute uses the chemical name for fentanyl, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] prop[a]namide. We simply call this 'fentanyl.'"); *Gonzalez v. Eischen*, No. 24-CV-3740 (LMP/LIB), 2024 WL 4882737, at *1

---

[3] Thompson also argues that if the Court enters judgment of acquittal for Count 1, it must also necessarily enter judgment of acquittal for Count 3. However, unlike the penalty provision in section 841(b)(1)(B), the penalty provision in section 841(b)(1)(C) refers to the drug schedules, which use the term "fentanyl," not the chemical name for this substance. Convictions under section 841(b)(1)(C) are predicate offenses for violations of 18 U.S.C. § 924(c), as charged in Count 3. Thus, Thompson's argument has no impact on the jury's verdict concerning Count 3.

(D. Minn. Nov. 25, 2024) (noting that "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide" is "more commonly known as fentanyl"); *United States v. Nunez-Acosta-Acosta*, No. 4:18-CR-3058, 2019 WL 494826, at *2 (D. Neb. Feb. 8, 2019) (noting that "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide" is "commonly known as 'fentanyl,' a Schedule II controlled substance"); *Williams v. Carter*, No. 23-CV-2207 (SAG), 2024 WL 3200705, at *2 (D. Md. June 27, 2024) (noting that section 841(b)(1)(B)(vi) uses "the chemical name for fentanyl"); *United States v. Cotchery*, 406 F. Supp. 3d 1215, 1219 n.2 (N.D. Ala. 2019) ("The statute uses the chemical name of the drug, 'N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.' But for simplicity, the court will use the drug's common name: fentanyl." (citation omitted)); U.S.S.G § 2D1.1(b)(13), (c) (listing fentanyl and its chemical name); U.S.S.G. App. C, amend. 807 (explaining rationale for amending guidelines to list the chemical name together with the common term); FDA Label, https://nctr-crs.fda.gov/fdalabel/ui/spl-summaries/criteria/774555 (last accessed Feb. 26, 2025) (indexing fentanyl product labeling, which recognize the chemical name as "N-phenyl-N-(1-(2-phenylethyl)-4-piperidinyl) propanamide"). In fact, even the statutes at issue in this case use the terms interchangeably. As noted above, section 841(a)(1)—the statute criminalizing possession and trafficking of drugs—refers to the drug schedules, which list "fentanyl," not the chemical name. 21 U.S.C. §§ 802(6); 841(a)(1), 812, Sched. II(b)(6). The penalty provisions for violations of section 841(a)(1) use both the common and chemical names: sections 841(b)(1)(A) and (B) use the chemical name, while section 841(b)(1)(C) refers to

7

"a controlled substances in schedule I or II."[4]  Based on the interchangeable use of both the chemical and common names, the Court concludes that "fentanyl" and "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide" refer to the same substance.[5]

Third, Thompson offers insufficient support for his motion.  Thompson directs the Court to no caselaw or other legal authority that makes any distinction between "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide" and "fentanyl," or that stands for the proposition that the terms are not synonymous as a matter of law.  The closest Thompson comes to such an argument is to hypothesize that the term "fentanyl" is a general, umbrella term that includes "hundreds of chemical compounds in the scientific literature often

---

[4] As noted above, Thompson does not argue that these statutes are ambiguous or irreconcilable.  The Court, therefore, need not embark on an in-depth application or discussion of interpretative principles.  Instead, the Court discerns no ambiguity in the interchangeable use of both the common and chemical names for the substance.  Moreover, Thompson does not provide distinct meanings of these two terms for the Court to consider, and the Court is concerned about interpreting the statute to give the term "fentanyl" a different meaning than the term "N-phenyl-N-(1-(2-phenylethyl)-4-piperidinyl) propenamide."  If these two terms have legally distinct meanings, then there would be no criminal penalty for possessing 40 grams or more of "fentanyl" or for possessing less than 40 grams of "N-phenyl-N-(1-(2-phenylethyl)-4-piperidinyl) propanamide."  Thus, the Court declines to interpret sections 841(a) and (b) in this manner.

[5] The Government makes a similar argument in their opposition brief, justifying the inclusion of the language "commonly called fentanyl" in the relevant jury instruction as proper judicial notice of a "legislative fact." (Doc. No. 117 at 11–18.)  The Court agrees.  "Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally." *United States v. Love*, 20 F.4th 407, 412 (8th Cir. 2021) (quoting *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976)).  Courts may take judicial notice of "legislative facts" at "any stage in the proceeding" and need not submit legislative facts to the jury.  *Id.*  Given the interchangeable use of the chemical and common names for fentanyl, the Court also concludes that the jury instruction reflects taking judicial notice of the legislative fact that the reference to "fentanyl" in schedule II, 21 U.S.C. § 812, Sched. II(b)(6), and the reference to "N-phenyl-N-(1-(2-phenylethyl)-4-piperidinyl) propanamide" in section 841(b)(1)(B) refer to the same substance.

referred to as a type of fentanyl." (Doc. No. 99 at 4.) The single authority that Thompson cites to in support of this proposition, however, is a journal article discussing "synthetic fentanyl analogs." (*Id.* at 4 n.2 (citing Harold E. Schueler, *Emerging Synthetic Fentanyl Analogs*, 7 ACAD. FORENSIC PATHOLOGY 36, 36–40 (Mar. 2017), https://pmc.ncbi.nlm.nih.gov/articles/PMC6474477/ [https://perma.cc/8A3Y-5QLH]). Contrary to the proposition for which it is cited, the article distinguishes fentanyl from a precursor chemical and from different chemical substances referred to as "fentanyl analogs." *Id.* at 37–38. These distinctions do not affect the meaning of the term "fentanyl" as it is used in sections 841(a)(1) and (b)(1)(B) because the relevant statutes separately recognize this precursor chemical and any "analogues" of fentanyl. *See* 21 U.S.C. § 841(b)(1)(B)(vi); *see also* 21 C.F.R. § 1308.12(g)(3). The article cited cannot, without additional legal authority, support granting Thompson's motion.

For these reasons, the Court denies Thompson's motion for judgment of acquittal.

## II.   RULE 33 MOTION FOR A NEW TRIAL

Thompson also moves for a new trial. (Doc. No. 99 at 6.) Under Rule 33, the Court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The district court has broad, but limited, discretion to grant or deny a motion for a new trial based on the sufficiency of the evidence, and it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Vega*, 676 F.3d 708, 722 (8th Cir. 2012) (quotations omitted). Such motions should be granted "sparingly and with caution" and "only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred."

*United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009).  For the reasons articulated above, the Court cannot conclude that this standard has been satisfied and, therefore, it denies Thompson's motion for a new trial.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendant Derrick John Thompson's Motion for Judgment of Acquittal or in the Alternative a New Trial (Doc. No. 99) is DENIED.

Dated:  June 12, 2025                                       *s/ Jeffrey M. Bryan*
                                                            Judge Jeffrey M. Bryan
                                                            United States District Court