UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 23-cr-358 (JMB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | DERRICK THOMPSON'S |
| | ) | SENTENCING POSITION |
| v. | ) | |
| | ) | |
| DERRICK JOHN THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

A jury found Derrick Thompson guilty of possessing with intent to distribute controlled substances, possessing a firearm as an ineligible person, and possessing a firearm during a drug trafficking crime.  He faces a mandatory minimum sentence of 10 years.

Mr. Thompson's federal charges and convictions arise from a tragic car crash that occurred in Minneapolis on June 16, 2023, which killed five individuals.  In the wake of this crash, the state of Minnesota charged Mr. Thompson with ten counts of criminal vehicular homicide and five counts of third-degree murder.  On June 6, 2025, a Hennepin County jury convicted Mr. Thompson of all counts at trial.  On July 24, 2025, Mr. Thompson's state case proceeded to sentencing, where the state court imposed five consecutive sentences of 192 months, 128 months, 128 months, 128 months, and 128 months, for a total combined state prison sentence of 704 months—or 58.67 years.  Mr. Thompson is currently 30 years old.  This means that, even with the state's good-time credits, he will be nearly 70 years old by the time he is released from prison.

Because the state court already imposed an extraordinarily long sentence, and because this federal prosecution is closely related to Mr. Thompson's state-court case, he respectfully requests that this Court impose a federal sentence of 10 years, to run concurrent with his state sentence. He also asks the Court to expressly credit the time he has already served while awaiting federal sentencing, because the Bureau of Prison will not do so otherwise. This will sanction the conduct for which Mr. Thompson was found guilty, while also ensuring that a federal detainer will eventually dissolve during his time in state custody, allowing him access to necessary programming in state prison. And because Mr. Thompson will be imprisoned for the next four decades of his life, this sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a).

I.   **A TEN-YEAR FEDERAL SENTENCE, TO RUN CONCURRENT WITH MR. THOMPSON'S 704-MONTH STATE SENTENCE, IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY.**

Mr. Thompson faces a 10-year mandatory minimum federal sentence, based on a five-year mandatory minimum on count one and a five-year mandatory minimum on count three. The Final Presentence Report (PSR) calculates an advisory Guidelines range of 120 to150 months, based on total offense level 26 and criminal history category VI. PSR ¶ 87, ECF No. 116. The PSR also notes the required 60-month consecutive term for count three. *Id.*

**A. Motion for Downward Departure to Criminal History Category V.**

Mr. Thompson respectfully moves the Court for a downward departure to criminal history category V. The PSR finds Mr. Thompson has 14 criminal history points, which corresponds to criminal history category VI. PSR ¶ 45. Yet two of these points come from a 2014 conviction for driving with a suspended sentence, where Mr. Thompson received 90 days' jail. *Id.* ¶ 37. Ordinarily, driving with a suspended license is too minor of an offense to accrue criminal history points. U.S.S.G. § 4A1.2(c)(1). However, the Guidelines call for criminal history points if the applicable sentence exceeds 30 days' jail, as it did here. *Id.* Separately, the Guidelines Manual in effect at the time of Mr. Thompson's offense of conviction allows for a downward departure to a lower criminal history category if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.2(b)(1) (deleted effective Nov. 1, 2025).[1]

Mr. Thompson submits that increasing his criminal history category from V to VI based on the misdemeanor offense of driving with a suspended license substantially overstates his criminal history. To be sure, he does not contend that he should be in a criminal history category lower than V, and he does not mean to make light of his criminal

---

[1] "If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). While the most recent Guidelines revision deleted almost every departure in the Manual, the Court retains discretion to treat Mr. Thompson as though he is in criminal history category V, based on overstated criminal history. *See* 18 U.S.C. § 3553(a); *Peugh v. United States*, 569 U.S. 530, 544 (2013).

history.  He simply contends that the already-substantial criminal history category V is sufficient to reflect the seriousness of his prior conduct.  If the Court agrees, this would mean counts one and two carry a Guidelines range of 110 to 137 months, based on total offense level 26 and criminal history category V.  *See* PSR ¶ 87.

In any event, and separate and apart from the advisory Guidelines range, a concurrent ten-year federal sentence for Mr. Thompson is sufficient but not greater than necessary, considering his 704-month state prison sentence.

### B.  The nature and circumstances of the offense.

The jury found Mr. Thompson guilty of possessing with intent to distribute at least 40 grams of a substance containing a detectable amount of fentanyl, unlawful possession of a firearm, and possessing a firearm during a drug trafficking crime.  ECF No. 84.  These are serious offenses and come with a heft mandatory minimum of 10 years in prison.  At the same time, they are nonviolent.  There was no allegation that Mr. Thompson used, much less threatened, the firearm against any other person.  Instead, the government's trial presentation indicated that law enforcement found the charged narcotics and handgun inside a closed bag, which itself was recovered from inside an SUV following a fatal car crash.

The state case against Mr. Thompson proceeded first: state authorities arrested Mr. Thompson and charged him with causing the deaths of five individuals involved in the June 16, 2023 car crash.  The state initially charged Mr. Thompson with 10 counts of criminal vehicular manslaughter, and later added 5 counts of third-degree murder.  Then, in December 2023, the federal government secured a writ to bring Mr. Thompson into

federal court on charges relating to the drugs and gun found during the state's crash investigation.  Mr. Thompson's federal jury trial was held in October 2024, while his state jury trial was held in June 2025.  He was found guilty on all charges.  Mr. Thomspon's state-court sentencing proceeded first, where he was sentenced to 704 months' imprisonment.  This Court will now impose its sentence on March 18, 2026.

### C.  Mr. Thompson's personal history and characteristics.

Mr. Thompson is 30 years old.  By the time he finishes serving his state prison sentence, he will be nearly 70 years old.  Adding consecutive federal time on top of the already extraordinary state penalty is greater than necessary under § 3553(a).

Mr. Thompson has long suffered from serious mental illness, which frequently went untreated.  This greatly impacted his life's trajectory.  At the young age of 7, while he was living in Georgia, Mr. Thompson was diagnosed with schizophrenia, bipolar disorder, depression, anxiety, and post-traumatic stress disorder.  PSR ¶ 66.  He experienced hallucinations and was prescribed a slew of antipsychotics.  His parents, however, were skeptical of the medical profession and decided to withhold prescribed medication from their son.  Instead, Mr. Thompson quickly turned to controlled substances to self-medicate. Not surprisingly, this only exacerbated Mr. Thompson's difficulties.

Throughout his upbringing, Mr. Thompson witnessed and was victim to significant violence and trauma, including domestic violence and community violence perpetrated by peers and the police.  When Mr. Thompson was 13, he witnessed his friend shot and killed in the streets.  The same thing happened again when he was 17.  Compounding his social problems, Mr. Thompson rarely stayed in one place for long, as his family frequently

moved between Illinois, Indiana, Georgia, and Minnesota. The lack of stability in his youth prevented Mr. Thompson from ever feeling settled, and ever establishing himself in a school community.

As he reached adulthood, Mr. Thompson should have been better positioned to address his ongoing mental health struggles. Yet the trauma and negative habits of his youth had took root and he continued his parents' example of eschewing medical intervention. His mental health festered. This, in turn, further led Mr. Thompson toward negative peer groups and the criminal justice system.

Mr. Thompson has served two prison sentences in his lifetime. The first, in 2017, was for a probation violation on a fifth-degree drug crime, for which he served 8 months. PSR ¶ 39. The second, in 2020, was for evading and leaving the scene of an accident, causing substantial injury, and possessing marijuana for sale, for which he was sentenced to 8 years in California prison.[2] PSR ¶ 41. During these prison sentences, Mr. Thompson was repeatedly exposed to trauma and violence. In 2017, he witnessed a fellow inmate hang himself after being denied care by prison officials. In 2020, Mr. Thompson witnessed a fellow inmate stabbed during a race riot. When Mr. Thompson left prison in January 2023, his underlying mental health problems were ever present.

Mr. Thompson's untreated mental health is the primary reason for his personal and legal difficulties. Adequately addressing his mental health is the only way he can improve.

---

[2] Through positive prison programming, including by serving as a volunteer firefighter with the state of California, Mr. Thompson served approximately four years and three months on his eight-year sentence.

To that end, it is crucial that Mr. Thompson have access to the full range of mental health and rehabilitative services available during his 40 years in state prison. If this Court were to impose a consecutive federal sentence, Mr. Thompson would have a federal detainer in place for the duration of his state-prison sentence, which in turn would limit his ability to program in state custody. Consequently, Mr. Thompson requests the Court order its sentence to run concurrently with his state sentences.

> **D. Mr. Thompson is in "primary state custody."  To ensure he can fully program in state prison, he asks the Court to run his federal sentence concurrent with his 704-month state sentence. Moreover, Eighth Circuit precedent permits a pronounced sentence below the mandatory minimum to account for Mr. Thompson's time in custody pending sentencing that will not be credited toward his federal sentence.**

To determine what is a reasonable sentence, the Court must consider society's needs for fair and just punishment, respect for the law, and deterrence. 18 U.S.C. § 3553(a)(2). Mr. Thompson's significant state prison sentence—whereby he will be in prison until he is approximately 70 years old—bears directly on these considerations.

After Mr. Thompson was charged and detained in Hennepin County, the federal government obtained a writ of *habeas corpus ad prosequendum* to secure Mr. Thompson's presence for these federal proceedings. ECF No. 11. This means Mr. Thompson remains in "primary state custody," so the BOP will not give credit for the two years and nine months (33 months) he has been detained pending sentencing in this matter because that time has already been credited against his state sentence.[3]  *See* PSR at F.2 (noting that

---

[3] Mr. Thomspon's "primary-state" custody status also means that, once he is sentenced in federal court, he will be returned to the Minnesota Department of Corrections to continue serving his 704-month sentence.

Mr. Thompson was arrested and detained by Hennepin County authorities on June 19, 2023); Defense Exhibit A at 3 (state court sentencing order giving Mr. Thompson credit for the 767 days served pending state sentencing); 18 U.S.C. § 3585(b) (precluding the BOP from crediting time spent in custody pending federal sentencing if any of that time has "been credited against another sentence"); BOP Policy 5880.28 (same).

Under U.S.S.G. § 5G1.3(b)(1), "the court **shall** adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." (Emphasis added). When applicable, then, the § 5G1.3(b)(1) adjustment is mandatory, though the district court retains discretion to vary above or below the post-adjustment sentence. *See United States v. Winnick*, 954 F.3d 1103, 1104–05 (8th Cir. 2020) (explaining the required procedure, step-by-step). Section 5G1.3(b)(1) applies here because Mr. Thompson's state sentences stem from conduct relevant to his federal offenses of conviction. *See* U.S.S.G. § 1B1.3(a)(1)(A) (relevant conduct includes "all acts and omissions committed . . . by the defendant . . . during the course of the [federal] offense of conviction").

Crucially, the Eighth Circuit has held this procedure may be applied even in cases involving federal offenses that carry mandatory minimum sentences; at least so long as the total sentence—the federal sentence added to the time served on the "undischarged term of imprisonment"—equals or exceeds the federal statutory minimum term. *United States v. Kiefer*, 20 F.3d 874, 876–77 (8th Cir. 1994). In effect, this allows the Court to give Mr. Thompson credit for time served on a related sentence, even if that means imposing a

sentence below the mandatory minimum. *See id.* at 877. Thus, a federal mandatory minimum sentence of 120 months, reduced by the 33 months that will not be credited by the BOP, is authorized. *See id.* This would result in a total pronounced sentence of 87 months. Mr. Thompson asks the Court to impose that sentence.

Mr. Thompson also asks the Court to order his federal sentence to run concurrently with his state sentence. If this Court imposes a concurrent sentence, Mr. Thompson's federal sentence will begin running the date it is imposed: March 18, 2026. But if the Court were to impose a consecutive sentence or remain silent on the consecutive-concurrent issue, the BOP would not begin running the federal sentence until after Mr. Thompson completes his 704-month state prison. And a federal hold would be in place to ensure Mr. Thompson is taken directly from state to federal custody.

Importantly, a detainer such as the federal hold would prevent a state inmate like Mr. Thompson from fully programming in state prison. With a consecutive federal sentence, and thus a federal hold in effect for the entire duration of Mr. Thompson's state prison term, Mr. Thompson would most likely remain in "Close Custody" status, meaning less programming. Consequently, if this Court were to stay silent on the issue or expressly order any part of Mr. Thompson's federal sentence to run consecutive to his 704-month state sentence, he would have fewer opportunities to complete necessary programming in state prison to address his mental health. *See* 18 U.S.C. § 3553(a)(2)(D) (requiring the Court to consider the need to provide "medical care, or other correctional treatment in the most effective manner"). And because the conduct underlying the state case is relevant to this federal prosecution, the federal sentence "**shall** be imposed to run concurrently to the

remainder of the undischarged term of imprisonment" with the state. *See* U.S.S.G. § 5G1.3(b)(2) (emphasis added); *see also United States v. McDonald*, 521 F.3d 975, 980 (8th Cir. 2008) (explaining that the district court always retains discretion under § 3553(a) to order concurrent sentencing).

## II.    CONCLUSION

Mr. Thompson respectfully requests that the Court impose a sentence of 120 months, minus the 33 months he has served awaiting sentencing because that time will not be credited by the BOP, for a total imposed sentence of 87 months, to run concurrent with his 704-month state prison sentence imposed in Hennepin County Case Number 27-CR-23-12910. Given that Mr. Thompson will be in state prison for the next 40 years of his life, this federal sentence fully satisfies the requirements of 18 U.S.C. § 3553(a).

Dated:  March 4, 2026                                    Respectfully submitted,

*s/ Matthew Deates*

MATTHEW DEATES
Attorney ID No. 0400318
Attorney for Mr. Thompson
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415